

IN THE

# Court of Appeals of Indiana

Hannah Janowiak,

*Appellant-Plaintiff*

v.

Kenneth Sandage and The Trustees of Purdue University,

*Appellees-Defendants*



FILED

Jul 31 2026, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 31, 2026

Court of Appeals Case No.
25A-CT-2937

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49D06-2310-CT-41286

**Opinion by Judge Kenworthy**
Judges Bradford and Pyle concur.

**Kenworthy, Judge.**

## Case Summary

In 2022, Kenneth Sandhage[1] struck Hannah Janowiak with his car as she was walking across the street on the then-named Indiana University Purdue University Indianapolis ("IUPUI") campus. Janowiak sustained injuries and sued Sandhage for negligence. During litigation, Janowiak learned Sandhage was a professor at Purdue University, and so she amended her complaint to add The Trustees of Purdue University ("Purdue") as a defendant and to allege Sandhage was acting in the scope of his employment at the time of the collision. Sandhage admitted as much in his answer to the amended complaint. He and Purdue (collectively, "Defendants") then each moved to dismiss the suit under provisions of the Indiana Tort Claims Act ("ITCA").[2] The trial court granted Defendants' motions.

On appeal, Janowiak presents two restated issues for our review:

> 1. Did the trial court err when it dismissed Janowiak's case against Sandhage for failure to state a claim upon which relief can be granted?

---

[1] Appellee's name shows as both "Sandage" and "Sandhage" in the record, but it appears "Sandhage" is the correct spelling.

[2] Ind. Code § 34-13-3-1 *et seq.*

2. Did the trial court err in granting summary judgment for Purdue?

[3] We affirm.

## Facts and Procedural History

[4] At all relevant times, Sandhage lived in Lafayette and was a professor at Purdue University in West Lafayette. On March 9, 2022, he drove his personal car to Indianapolis and spent the day on the IUPUI campus. Just after 5:00 p.m., he left to drive home. After stopping his car at the intersection of Blake and North Streets, he turned left and struck Janowiak as she was walking in a pedestrian crosswalk. Campus police responded and took the parties' statements. Sandhage provided the police with his driver's license and information about his personal automobile insurance policy through Erie Insurance ("Erie"). The police incident report listed Sandhage as a "Vis[i]tor" and Janowiak as an "IU employee." *Appellant's App. Vol. 2* at 15. Janowiak sustained injuries and was taken to the hospital.

[5] The next month, Janowiak retained counsel, who sent a letter of representation to Erie and requested certain insurance documents and photographs related to the claim. Because Janowiak believed Sandhage may have been using his cell phone around the time of the collision, her counsel also requested information about Sandhage's cell phone provider and account. Erie acknowledged the letter on April 14 and denied Sandhage was on his phone.

On October 23, 2023, nineteen months after the collision, Janowiak sued Sandhage in his personal capacity for negligence. After receiving the complaint, Sandhage talked to his department chair, and on November 3, he notified Purdue's legal counsel of the lawsuit and requested indemnification.

Soon after, Janowiak served discovery requests on Sandhage. In January 2024, Sandhage responded to interrogatories, including two questions about his employment. In the first, Janowiak asked whether Sandhage was acting in the scope of his employment at the time of the incident. Sandhage objected to the extent the question called for a legal conclusion. But he responded that "in the interest of full disclosure," he was employed by Purdue, "had just finished working in collaboration with a professor at IUPUI," and was leaving IUPUI and heading to Lafayette when the incident occurred. *Appellees' App. Vol. 2* at 39. When asked to describe his actions in the eight hours prior to the collision, Sandhage responded that he had been conducting "business/work" on the IUPUI campus during the day and was leaving when his car collided with Janowiak. *Id*. at 43.

In February 2024, Janowiak moved to amend her complaint and add Purdue as a defendant. In the amended complaint, Janowiak alleged Sandhage was a Purdue employee and, at the time of the incident, acting within the course and scope of his employment. Accordingly, Janowiak alleged Purdue was vicariously liable for losses caused by Sandhage's negligence. The trial court granted Janowiak's motion to amend.

[9] Sandhage answered the amended complaint, first asserting he lacked sufficient information to admit or deny Janowiak's scope-of-employment allegation. But on April 10, Sandhage amended his answer to admit he was acting in the course and scope of his employment. Sandhage and Purdue then each moved to dismiss the claims under Indiana Trial Rule 12(B)(6) on the grounds the ITCA barred Janowiak's suit against them. To its motion, Purdue attached an affidavit from its corporate executive, averring Janowiak had not provided ITCA notice to Purdue.

[10] On April 23, 2024, over two years after the incident, Janowiak provided a formal tort claim notice to Purdue, stating she first learned of the relationship between Sandhage and Purdue on January 12, 2024, through Sandhage's interrogatory responses. Janowiak then filed her response to the motions to dismiss, arguing she substantially complied with the tort claim notice requirements and even if she did not, Purdue should be equitably estopped from asserting an ITCA notice defense. She designated eleven exhibits in support of her response, including an affidavit of the IUPUI campus police officer who responded and completed the crash report. Janowiak also designated portions of Sandhage's deposition, in which he admitted that he never disclosed to Janowiak or her representatives that he was acting in the scope of his employment until the lawsuit against him was filed.[3]

---

[3] Janowiak designated excerpts of the deposition testimonies of Sandhage and Mark Kebert (a Purdue representative). *See Appellant's App. Vol. 2* at 42–47. On appeal, Janowiak included the *entire* transcripts of

[11]     The trial court held a hearing on the motions, at which the parties argued the motions to dismiss should be converted to summary judgment motions due to the parties' designated materials. The trial court took the motions under advisement. After a brief second hearing, the trial court granted Defendants' motions to dismiss solely under Rule 12(B)(6) for failure to state a claim upon which relief can be granted. The court explained that it did so without considering Purdue's affidavit or Janowiak's designated evidence, instead considering only the complaint and Janowiak's concession that the ITCA's 180-day notice period had passed when she provided Purdue with a formal tort claim notice.

## The trial court did not err in granting Sandhage's motion to dismiss under Trial Rule 12(B)(6).

[12]     Janowiak first argues the trial court erred in granting Sandhage's motion to dismiss. A motion to dismiss under Rule 12(B)(6) tests the complaint's legal sufficiency, not the facts that support it. *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017). When ruling on a motion to dismiss, the court views the pleadings in the light most favorable to the non-moving

---

these depositions in her appendix. *See id.* at 89–211. Sandhage moved this Court to strike these portions of Janowiak's appendix, and Defendants submitted only the designated portions of the depositions in their joint appendix. *See Appellees' App. Vol. 2* at 65–91. "It is well established that to make a determination in a summary judgment proceeding, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court." *Leo Mach. & Tool, Inc. v. Poe Volunteer Fire Dep't, Inc.*, 936 N.E.2d 855, 859 (Ind. Ct. App. 2010). By separate order issued today, we grant Sandhage's motion to strike and consider only the select deposition testimony designated to the trial court in support of the parties' motions and responses.

party, drawing every reasonable inference in the non-movant's favor. *Robertson v. State*, 141 N.E.3d 1224, 1227 (Ind. 2020). A trial court's decision on a Rule 12(B)(6) motion presents a legal question which we review *de novo*. *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015). We will not affirm a trial court's dismissal under Rule 12(B)(6) unless it is apparent the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id*.

[13] The ITCA governs tort claims against political subdivisions and their employees. *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020); I.C. ch. 34-13-3.[4] The ITCA provides substantial immunity for a government employee's negligent conduct when the employee's acts or omissions giving rise to a claim occurred within the scope of his employment. *Burton*, 140 N.E.3d at 852. Under the statute, a "lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." I.C. § 34-13-3-5(b) (2003); *see also Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (holding the same language under a prior version of the statute is "fairly explicit" that "a plaintiff may not now sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment"); *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1114–15 (Ind. Ct.

---

[4] The ITCA applies more broadly to governmental entities. *See* I.C. § 34-13-3-3 (2021). The term "governmental entity" includes a "political subdivision of the state." I.C. § 34-6-2-49 (2013). The parties agree Purdue is a political subdivision for purposes of the ITCA. *See* I.C. § 34-6-2-110(7) (2007) (defining "political subdivision" to include a "state educational institution").

App. 2001) ("In general, a plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his employment."). To maintain a lawsuit against a government employee personally, the plaintiff must allege the employee's act or omission that caused a loss was "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." I.C. § 34-13-3-5(c).

[14] In her original complaint, Janowiak named only Sandhage as a defendant and alleged his negligence was the direct and proximate cause of her injuries. After some discovery, Janowiak amended her complaint and named Purdue as an additional defendant. She again alleged Sandhage negligently caused her injuries, but added that at the time of the collision, Sandhage "was operating his vehicle while acting within the course and scope of his employment, agency and/or contract with Defendant Purdue." *Appellant's App. Vol. 2* at 26.[5] The facts of the amended complaint, taken as true, bar Janowiak's suit against Sandhage personally. *See Bushong*, 790 N.E.2d at 471–72. Since Janowiak filed her amended complaint, no party has argued Sandhage acted clearly outside the scope of his employment, or that his acts were criminal, malicious, willful and wanton, or calculated to benefit him. Because the facts alleged in the complaint are incapable of supporting relief as to Janowiak's claim against Sandhage, the

---

[5] Sandhage admitted this allegation in his amended answer.

trial court did not err in granting Sandhage's motion to dismiss Janowiak's claim against him.

## Purdue is entitled to summary judgment as a matter of law.

[15] Janowiak next argues the trial court erred in dismissing her complaint against Purdue. Janowiak's argument is two-fold. First, she argues she substantially complied with the ITCA's tort claim notice provision, so her suit against Purdue should be allowed to proceed. Second, she argues that even if she didn't timely provide notice, Purdue should be equitably estopped from relying on an ITCA notice defense.

### Standard of Review

[16] Before addressing the merits of Janowiak's arguments, we must address the appropriate standard of review. In the case of a Rule 12(B)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Ind. Trial Rule 12(B). A trial court converts a Rule 12 motion to a motion for summary judgment by its consideration of extraneous matters, regardless of whether the court expressly converts the motion. *Davidson v. State*, 211 N.E.3d 914, 925 (Ind. 2023).

[17] As discussed above, the trial court granted Purdue's motion to dismiss under Rule 12(B)(6) while explicitly excluding all evidence beyond the complaint and Janowiak's admission she filed the tort claim notice more than two years after the incident. In the context of Rule 12 motions, materials of which a trial court

may take judicial notice are not considered matters outside the pleading. *Id*. State court filings, a public record request, and a tort-claim notice are items our Supreme Court does not consider "extraneous materials" that, if considered by a trial court, would require converting a Rule 12 to a Rule 56 motion. *Id*. In this case, the resolution of Purdue's motion to dismiss under Rule 12(B)(6) requires only consideration of the face of the complaint and the tort claim notice made in April 2024. Therefore, it was not erroneous for the trial court to decline to convert Purdue's motion to dismiss to one for summary judgment, in so much as the trial court entered judgment solely under Rule 12(B)(6).

[18] Yet in response to Purdue's motion to dismiss, Janowiak raised an equitable estoppel claim and designated materials in support. Resolution of Janowiak's estoppel argument requires consideration of the designated materials, including the police officer's crash report and Sandhage's deposition testimony and interrogatory responses. Accordingly, the issue requires conversion of Purdue's Rule 12(B)(6) motion to a Rule 56 motion for summary judgment. *See, e.g., Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 259 (Ind. 2014) (reviewing compliance with the ITCA notice requirement, including substantial compliance and equitable arguments, under a summary judgment standard of review); *Schoettmer v. Wright*, 992 N.E.2d 702, 705–06 (Ind. 2013) (same).

[19] When a court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to designate Rule 56 materials. *Azhar v. Town of Fishers*, 744 N.E.2d 947, 950 (Ind. Ct. App. 2001). A trial court's failure to give the parties explicit notice of conversion is

reversible error only if the court did not give a party a reasonable opportunity to respond and the party is thereby prejudiced. *Id.* (citing *Ayers v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1233 (Ind. 1986)). Here, because both Purdue and Janowiak designated materials (and, in fact, argued the trial court *should* convert the motion), our review under the summary judgment standard presents no risk of prejudice to the parties.

[20] Our summary judgment standard is well settled:

> We review the trial court's ruling on a motion for summary judgment de novo, and we will affirm a grant of summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A "genuine issue" is one upon which the parties proffer differing accounts of the truth, or as to which conflicting inferences may be drawn from the parties' consistent accounts; a "material fact" is one that affects the outcome of the case. Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party.

*Lyons*, 19 N.E.3d at 259 (internal quotation marks and citations omitted).[6]

---

[6] The trial court did not explicitly rule on Janowiak's estoppel argument, as shown by the court verbally declining to consider any evidence beyond the complaint and by its written judgment. Generally, we consider only those issues which were briefed and argued by the parties before the trial court and which the trial court considered and ruled upon. *Richardson v. Calderon*, 713 N.E.2d 856, 863 (Ind. Ct. App. 1999), *trans. denied.* An intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. *GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). This rule "in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *Id.* And the rule reflects the allocation of trial and appellate functions in our justice system. Trial courts have the authority to hear and weigh evidence, judge the credibility of witnesses, apply the law to the facts found, and decide questions raised by the parties. *Id.* Appellate courts,

## Janowiak's complaint against Purdue is barred for failure to provide timely notice to Purdue under the ITCA.

[21] We turn now to Janowiak's claim she substantially complied with the ITCA. Under the ITCA, a tort claim against a governmental entity is barred unless the claimant provides the entity with timely notice of the claim. *6232 Harrison Ave. LLC v. City of Hammond*, 181 N.E.3d 379, 384 (Ind. Ct. App. 2021). A claimant must provide the prescribed notice to a political subdivision within 180 days after the loss occurs. I.C. § 34-13-3-8(a) (1998). Notice "must describe in a short and plain statement the facts on which the claim is based." I.C. § 34-13-3-10 (1998). The purpose of the notice requirement is to ensure government

---

by contrast, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. *Id.*

Nevertheless, we believe it is a proper exercise of our authority in this case to decide whether Purdue is entitled to summary judgment, even if the trial court explicitly did not. First, the issue of estoppel was briefed and argued by both parties to the trial court, so this is not a case where the issues were raised for the first time on appeal. *See Appellant's App. Vol. 2* at 51 (Janowiak's response to motions to dismiss); *Appellees' App. Vol. 2* at 96 (Defendants' joint reply in support of their motions to dismiss); *Tr. Vol. 2* at 18 (Janowiak presenting equitable estoppel argument during hearing on the motion to dismiss); *Id.* at 6 (Defendants' argument at hearing).

Second, the applicable standard of review does not require us to perform functions typically reserved for trial courts. On appeal from the entry of summary judgment, we exercise *de novo* review, applying the same standard as the trial court. *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 220 (Ind. 2023). Summary judgment is "judgment entered when there are no genuine issues of material fact to be resolved." *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). A trial court is not required to enter findings of fact and conclusions to support a summary judgment ruling, and when entered, they are not binding on appeal. *Coulter v. Caviness*, 128 N.E.3d 541, 545 (Ind. Ct. App. 2019). Therefore, the review of a grant or denial of a motion for summary judgment does not require us to find facts or weigh witness credibility—acts typically within a trial court's authority. If a genuine issue of material fact exists, summary judgment is simply not appropriate, and we would remand to the trial court.

Third, the estoppel argument has been fully briefed on appeal, and the parties appear to agree it is properly before this Court. So again, there is no prejudice to the parties by deciding the issue. For these reasons, we proceed to decide whether Purdue was entitled to summary judgment.

entities can investigate the incident giving rise to the claim and prepare a defense. *Schoettmer*, 992 N.E.2d at 706.

[22] Not all technical violations of the ITCA are fatal to a claim. *Brown v. Alexander*, 876 N.E.2d 376, 381 (Ind. Ct. App. 2007), *trans. denied*. Notice is sufficient if it "substantially complies with the content requirements of the statute," *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989), such that "the purpose of the notice requirement is satisfied," *Schoettmer*, 992 N.E.2d at 707 (citation omitted). A notice satisfies the statutory purpose and is substantially compliant if it is filed within the 180-day period, informs the political subdivision of the claimant's intent to make a claim, and contains sufficient information which reasonably affords the entity an opportunity to promptly investigate the claim. *Collier*, 544 N.E.2d at 499. "As a general rule, an evaluation of substantial compliance looks not to the information held by the governmental entity but instead to the efforts made by the claimant to notify the governmental entity of the claim." *Brown*, 876 N.E.2d at 382. What constitutes substantial compliance is a question of law, albeit a fact-sensitive determination. *Schoettmer*, 992 N.E.2d at 707.

[23] In this case, the collision occurred in March 2022, and Janowiak gave formal, statutorily required notice in April 2024—well beyond the 180-day deadline. Still, Janowiak argues she substantially complied with the ITCA requirements because she gave formal notice to Purdue within 180 days of January 12, 2024. That was the date Sandhage responded to an interrogatory by stating he was on the IUPUI campus to collaborate with another professor.

[24] Although Janowiak claims she could not have discovered Purdue's involvement until January 2024, the operative question for determining the notice period is when Janowiak discovered she sustained a loss. *See* I.C. § 34-13-3-8(a) (providing a tort claim notice is due within 180 days "after the loss occurs"). A loss occurs "'when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Reed v. City of Evansville*, 956 N.E.2d 684, 691 (Ind. Ct. App. 2011) (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)), *trans. denied*. Here, Janowiak knew she sustained a loss in 2022 when the collision occurred, not when Sandhage answered interrogatories. Notice was due in fall 2022, and the untimely notice Janowiak gave Purdue in spring 2024 was not substantially compliant. *Lyons*, 19 N.E.3d at 260 (holding there was no substantial compliance where the plaintiffs filed a notice of claim more than one year after a known loss).

[25] Janowiak next argues she substantially complied with the ITCA notice requirements when she sent a letter of representation and initiated negotiations with Sandhage's personal liability insurer, Erie, within a month of the accident. Because Erie knew the facts of the claim and had opportunity to promptly investigate it, Janowiak contends the statutory purpose of notice was satisfied.

[26] Janowiak directs us to no case in which a claimant's communication with an employee's personal automobile insurance carrier constitutes substantial compliance with the ITCA notice requirements. Different panels of this Court have reached varying conclusions as to whether a plaintiff's notice to a

*governmental entity's* insurer constitutes substantial compliance with the ITCA. *See Schoettmer*, 992 N.E.2d at 707 (comparing cases). But even there, courts have declined to find substantial compliance where the claimant communicated only with the entity's insurer and "took no steps whatsoever to comply with the notice statute." *Id*. at 708. Further, our Supreme Court has rejected the argument that a governmental entity's insurer is the entity's agent for the purpose of receiving tort claim notices. *Id*. (holding no section of the ITCA creates such an agency relationship and discerning no intent on the legislature's part to create one). Janowiak directs us to no statute which would impose an agency relationship between a governmental entity and a third-party insurer. Because there is no such relationship between Purdue and Erie, and Janowiak took no steps to give Purdue the statutorily required notice, the trial court did not err in dismissing Janowiak's claim against Purdue for failure to give timely notice under the ITCA.

### Purdue is not equitably estopped from asserting its ITCA notice defense.

[27] As shown above, Janowiak essentially pled herself out of court by amending her complaint—after the tort claim notice period had run—to allege Sandhage was acting in the scope of his employment and Purdue should be held vicariously liable for her losses. To revive her claims, Janowiak argues the

doctrine of equitable estoppel should bar Purdue[7] from asserting its ITCA notice defense.

[28] There are various types of estoppels, but all "are based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). Under the doctrine of equitable estoppel, "if a party's actions prevent another party from obtaining the requisite knowledge to pursue a claim, then equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 383 (Ind. 2019) (internal quotation marks and citation omitted).[8]

---

[7] Technically, Janowiak argues "the defendants"—that is, both Sandhage and Purdue—should be equitably estopped from relying on the "ITCA notice defense." *See Appellant's Br.* at 11–17. As discussed above, Janowiak's claim against Sandhage is barred because Sandhage cannot be sued personally under the ITCA. Even if equity excused Janowiak from giving Purdue timely notice, the ITCA would still bar her claim against Sandhage. (The trial court requested supplemental briefing on the issue of whether Janowiak could proceed against Sandhage in his personal capacity even if Purdue were dismissed. But on appeal, Janowiak does not explicitly argue Sandhage should be estopped from claiming he was acting in the scope of his employment. In any case, Janowiak alleged it, and Sandhage has admitted he was.) Moreover, the cases on which Janowiak relies concern only estoppel of a governmental entity due to lack of notice. We construe Janowiak's appellate issue as asking us to review whether Purdue should be estopped from asserting its ITCA notice defense.

[8] Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and the trial court must determine before trial. *6232 Harrison Ave.*, 181 N.E.3d at 384. "While the 180-day notice requirement is a procedural precedent, it is similar in its operation and effect to a statute of limitations." *Town of Cicero v. Sethi*, 189 N.E.3d 194, 211 (Ind. Ct. App. 2022), *trans. denied*.

Equitable estoppel is typically "linked to claims of fraudulent concealment," *Kenworth*, 134 N.E.3d at 383, that is, "circumstances involving an actual false representation or concealment of existing material fact," *Paramo v. Edwards*, 563 N.E.2d 595, 598–99 (Ind. 1990). The doctrine also applies to other conduct that lulls a party into inaction. *Kenworth*, 134 N.E.3d at 383. For the doctrine to be invoked, the conduct of the party to be estopped or its agent "must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder" the other party. *Paramo*, 563 N.E.2d at 599. "These factors have often been significant in the reluctance of our courts to apply equitable estoppel to benefit persons represented by counsel." *Id.*

"To make out a claim of estoppel, one must show: (1) a representation or concealment of material fact; (2) made by a person with knowledge of the fact and with the intention that the other party should act upon it; (3) to a party ignorant of the matter; and (4) which induced the other party to act upon it to his detriment." *Ind. Dep't of Env't Mgmt. v. Conard*, 614 N.E.2d 916, 921 (Ind. 1993). More recently, our Supreme Court has explained that a plaintiff claiming estoppel in response to an ITCA notice defense "must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Schoettmer*, 992 N.E.2d at 709 (internal quotation marks and citation omitted). Equitable estoppel will not be applied against a governmental entity absent "clear evidence that its agents made representations upon which the party asserting

estoppel relied." *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004). The party asserting estoppel bears the burden of providing clear evidence to support it. *Id*.

[31] The thrust of Janowiak's estoppel argument is that Sandhage, as Purdue's employee and agent, fraudulently concealed that he was acting in the course and scope of his employment at the time of the collision. In support, she points to the crash report describing him as a visitor, rather than a Purdue employee. Based on the facts of the collision, she claims she had "no reasonable way to know that the ITCA could have applied to her claim." *Appellant's Br*. at 13. She also alleges that through this "concealment of his employment" status, Sandhage induced her "to negotiate only with [his] personal insurance carrier until after the ITCA notice deadline had passed." *Id.* at 14.

[32] Drawing all reasonable inferences in Janowiak's favor, the designated evidence shows Janowiak lacked knowledge Sandhage was acting as a government employee at the time of the collision until he responded to Janowiak's interrogatories in January 2024. But Janowiak has not shown she lacked the means of knowledge as to the pertinent facts. Nor does the evidence establish Sandhage made false representations, concealed his employer or employment-related activities, or engaged in conduct that prevented inquiry, eluded investigation, or was designed to mislead or hinder Janowiak from knowing the truth.

[33] Regarding his conduct at the time of the collision, there is no evidence Sandhage lied about his government employment or business activities to Janowiak or police. According to Sandhage's interrogatory response and deposition, the only communication he had with Janowiak at the scene was to ask "if she was okay." *Appellees' App. Vol. 2* at 41. According to the crash report, Sandhage told the IUPUI police officer "he was not familiar with the area[.]" *Id.* at 52. In the report, the officer described Janowiak as an IU employee and listed Sandhage as a visitor. According to the officer's affidavit, that information "would have come from me speaking with the parties" and it was his "typical practice to note in a report that someone with no affiliation with IUPUI was a 'Visitor'." *Id.* at 57. At most, the police officer's report and affidavit support a reasonable inference that Sandhage told the officer he was unaffiliated with IUPUI and/or visiting the IUPUI campus. As a Purdue professor from West Lafayette on the IUPUI campus for the day, this was not patently false. The record is silent as to anything further Sandhage said to Janowiak or the officer at the time of the incident or what, if any, questions were asked of him. The evidence does not support an inference that Sandhage made false or misleading statements designed to hinder Janowiak from discovering the truth of his employment or business activities.

[34] Further, there is no evidence Sandhage or Purdue made false statements or acted in the ensuing months to conceal the facts or prevent Janowiak's counsel from investigating the circumstances surrounding the accident. Janowiak quickly retained counsel, who asked Erie for documentation and information

regarding Sandhage's cell phone use during the incident. Yet Janowiak apparently waited over a year to ask questions about Sandhage's employment and activities that day.[9] At no point has Janowiak alleged she asked such questions of Sandhage but he was deceptive, evasive, or silent. Once asked, Sandhage provided the information. Estoppel is not appropriate where the party claiming estoppel had the means of knowledge but failed to investigate the underlying facts. *See Sethi*, 189 N.E.3d at 206 (holding unrepresented plaintiffs who failed to independently verify statements made by a governmental entity's attorney could not be said to lack knowledge or the means of knowledge of the facts underlying their claims in time to file tort claim notice).

[35] Moreover, the critical question in deciding whether estoppel is appropriate in this context is whether the governmental entity had actual knowledge of and investigated the claim yet induced the plaintiff to believe filing a tort claim notice was not required. *City of Columbus v. Londeree*, 145 N.E.3d 827, 833–34 (Ind. Ct. App. 2020); *Coghill v. Badger*, 418 N.E.2d 1201, 1208 n.6 (Ind. Ct.

---

[9] Erie allegedly engaged in prelitigation negotiations with Janowiak over several months without raising the issue that Sandhage might have been acting in the scope of his employment. *See Appellant's Br.* at 13–14 (arguing Erie "engaged in negotiations with Janowiak as if Sandhage had, in fact, been operating his vehicle only in a personal capacity"). In the trial court, Janowiak designated no evidence concerning her counsel's negotiations with Erie beyond the initial letter of representation and response. We have no reason to doubt that negotiations continued, but neither does designated evidence support the assertion. Regarding Erie's knowledge of Sandhage's employment activities, Janowiak attempted to depose Erie's claims adjuster to learn if or when Sandhage told Erie he was acting as a government employee at the time of the incident. But Sandhage filed a motion to quash the subpoena, and the trial granted Sandhage's motion. Janowiak does not appeal that decision.

App. 1981) ("[T]he crucial question is whether the governmental unit had actual knowledge of and investigated the accident and surrounding circumstances. In addition, acts of the governmental unit must have induced the plaintiff to believe that formal notice was unnecessary.").[10]

[36] This Court's opinion in *Londeree*, 145 N.E.3d 827, is instructive, as it pertains to a plaintiff who communicated with the wrong party's insurer until after the ITCA notice deadline passed. There, the plaintiff slipped on ice in the parking lot of an organization called FFY and suffered injuries. The city of Columbus provided snow removal services in FFY's lot. The plaintiff filed an incident report with FFY. She also called the city about the incident, and a city employee told her the city's insurance company would contact her. However, FFY's insurer, not the city's, called the plaintiff. The plaintiff and FFY's insurance agent spoke many times, during which the agent started to believe the city might have liability. The agent told the plaintiff about the two-year statute of limitations to sue but not the ITCA notice deadline. FFY's insurer eventually denied liability—four months after the deadline to file a tort claim notice with the city.

[37] When the plaintiff sued the city, the city asserted an ITCA notice defense and moved for summary judgment. In response, the plaintiff argued the city should be estopped from doing so because the plaintiff detrimentally relied on the

---

[10] The *Londeree* Court misattributes this quote to *Madison Consolidated Schools v. Thurston*, 135 N.E.3d 926 (Ind. Ct. App. 2019).

statements, conduct, and representations of the city employee and FFY's agent. On appeal, the *Londeree* Court focused its review on the actions of the governmental entity. In so doing, it concluded that even assuming the city employee intended to mislead the plaintiff during that initial call, the undisputed facts showed the city did nothing thereafter to induce the plaintiff to believe formal compliance with the notice requirement was unnecessary. *Id*. at 836–37. As a result, the city was entitled to summary judgment as a matter of law because there was no genuine issue of material fact on the issue of estoppel. *Id*. at 837.

[38] Similarly, even if we assume Sandhage intended to mislead or confuse Janowiak by stating he was visiting and/or unaffiliated with IUPUI and by providing his personal insurance on the day of the accident, this minimal communication makes it inappropriate to estop Purdue from using the notice defense. *See id.* at 836 (holding "the complete absence of communication" between the city and the plaintiff after the city employee's initial call made it "inappropriate to estop the City from using the notice defense"); *see also Story Bed & Breakfast*, 819 N.E.2d at 67 ("The State will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied.").

[39] Nevertheless, Janowiak likens her situation to that of the plaintiffs in *Schoettmer*, 992 N.E.2d 702, and *Madison Consolidated Schools v. Thurston*, 135 N.E.3d 926 (Ind. Ct. App. 2019). In *Schoettmer*, the plaintiff was injured in a car accident with an employee of an entity which, unbeknownst to the plaintiff, was a

political subdivision subject to the ITCA. 992 N.E.2d at 705. The unrepresented plaintiff negotiated directly with the entity's insurance agent, who told the plaintiff the claim could not be settled until after his medical treatment was completed and did not advise the plaintiff of the ITCA notice deadline. The plaintiff relied on the agent's advice and waited to hire counsel and sue the entity until after the ITCA deadline passed. Under these facts, our Supreme Court held there were genuine issues of material fact as to whether the entity should be estopped from asserting an ITCA notice defense. *Id*. at 709–10.

[40] In *Thurston*, the plaintiff was a student injured in an accident while riding a school bus. 135 N.E.3d at 928. There, too, the school's insurance agent encouraged the plaintiff to finish medical treatment before discussing a settlement. Although the school's agent warned the plaintiff of the statute of limitations, the agent never disclosed the ITCA notice requirement. This Court held genuine issues of material fact precluded summary judgment on whether the school should be equitably estopped from asserting an ITCA notice defense. *Id*. at 930.

[41] In both cases, there was evidence the governmental entities' agents engaged in settlement discussions with the plaintiffs, suggested or required the plaintiffs to wait to settle until their medical treatments were complete, and induced plaintiffs to reasonably believe formal ITCA notice was unnecessary. *See Schoettmer*, 992 N.E.2d at 709–10; *Thurston*, 135 N.E.3d at 930. This case is distinguishable, though, because there is no indication in the record Purdue or

Sandhage made statements or undertook actions during negotiations to induce Janowiak to believe compliance with the ITCA notice requirement was unnecessary. Accordingly, there are no material issues of fact as to whether Purdue should be estopped from raising its ITCA notice defense.

[42] In a closely related argument, Janowiak contends Purdue should be estopped from asserting its notice defense under the equitable doctrine of fraudulent concealment. Fraudulent concealment operates to estop a defendant from asserting the statute of limitations whenever the defendant has—either by deception or by a violation of duty—concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action. *Lyons*, 19 N.E.3d at 260. "In such cases, equity will toll the commencement of the applicable time limitation until such time as the plaintiff discovers, or in the exercise of ordinary diligence should discover, the existence of the cause of action." *Id*. Active fraudulent concealment requires a showing that the defendant (1) had actual knowledge of the alleged wrongful act, (2) intentionally concealed it from the plaintiff, (3) by making some statement or taking some action calculated to prevent inquiry or to mislead, (4) upon which the plaintiff reasonably relied. *Id.* at 260–61. Passive fraudulent concealment requires (1) a relationship between the parties such that the defendant has a duty to disclose the alleged wrongful act to the plaintiff and (2) a breach of that duty. *Id*. at 261. As to a duty owed, "Indiana law does not impose an affirmative duty on [a governmental entity] to advise [plaintiffs] that they were

required to file notice under the ITCA within 180 days." *Sethi*, 189 N.E.3d at 208.

[43] Janowiak cites *Lyons,* 19 N.E.3d 254, in support of her argument. There, the parents of a child who choked to death at school sued the school and administrators for negligence, wrongful death, and federal civil rights violations, but failed to file a tort claim notice within 180 days of the incident. On summary judgment, the plaintiffs designated evidence the school concealed the existence of the wrongful acts forming the basis of their claims, such as by misrepresenting facts about the time the child was without oxygen, failing to preserve video evidence, and threatening to fire school employees who witnessed the incident. In light of the designated evidence, our Supreme Court held there were genuine issues of material fact as to whether the doctrine of active fraudulent concealment tolled the statute of limitations and barred the school from asserting an ITCA notice defense. *Id*. at 261.

[44] Unlike in *Lyons*, there is no evidence Purdue or Sandhage concealed wrongful acts to prevent Janowiak from discovering a cause of action. Rather, Janowiak failed to investigate the facts surrounding a *known* claim and, after discovery, amended her claim to pursue Purdue after the notice period had run.

[45] Finally, Janowiak argues that if Purdue is entitled to rely on the ITCA notice defense, it will put "future claimants in a dilemma of choosing between tendering frivolous ITCA notices or hastily filing suit, both of which are contrary to public policy." *Appellant's Br.* at 16. As to the latter, our Supreme

Court has recognized "that it may be desirable to encourage potential claimants to work with insurers to settle claims rather than proceed directly to litigation," and a court's failure to find substantial compliance with the ITCA notice requirement "may tend to encourage the opposite." *Schoettmer*, 992 N.E.2d at 708. Nevertheless, "such policy considerations [are to] be addressed in the proper forum: the General Assembly." *Id*.

[46] In sum, Janowiak failed to provide timely notice to Purdue of her tort claim, and there are no genuine issues of material fact as to whether Purdue should be estopped from raising its ITCA notice defense. Accordingly, Purdue is entitled to summary judgment as a matter of law.

## Conclusion

[47] The trial court did not err in dismissing Janowiak's complaint under Rule 12(B)(6), and Purdue was entitled to summary judgment on Janowiak's claim.

[48] Affirmed.

Bradford, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Sarah Graziano
Hensley Legal Group, PC
Fishers, Indiana

ATTORNEYS FOR APPELLEE KENNETH SANDAGE

John W. Mervilde
Kevin D. Lichtenberger

Schultz & Pogue, LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE THE TRUSTEES OF PURDUE UNIVERSITY

Barry L. Loftus
Danielle K. Fortin
Stuart & Branigin LLP
Lafayette, Indiana